Stan Casper (State Bar No. 56705)
Thom Seaton (State Bar No. 62713)
**CASPER, MEADOWS, SCHWARTZ & COOK**
A Professional Corporation
California Plaza
2121 North California Blvd., Suite 1020
Walnut Creek, California  94596
Telephone:    (925) 947-1147
Facsimile:     (925) 947-1131

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY CLOUTHIER and ANN CLOUTHIER, individually and on behalf of the ESTATE OF ROBERT JOHN CLOUTHIER,<br><br>                        Plaintiffs,<br><br>        vs.<br><br>COUNTY OF CONTRA COSTA, CONTRA COSTA SHERIFF WARREN RUPF; sued in his individual capacity and as an employee of Contra Costa County; CONTRA COSTA SHERIFF'S DEPUTY MATT FOLEY, sued in his individual capacity and as an employee of Contra Costa County; CONTRA COSTA SHERIFF'S DEPUTY ERIK STEELE, sued in his individual capacity and as an employee of Contra Costa County; MARGARET BLUSH, sued in her individual capacity and as an employee of Contra Costa County; and DOES 1-100;<br><br>                        Defendants. | *Case No.*<br><br>**VIOLATION OF CIVIL RIGHTS**<br>  **42 U.S.C. § 1983**<br>  **42 U.S.C. § 1988**<br>**VIOLATIONS OF STATE LAW**<br>  **California Government Code**<br>  **§§ 844.6(d); 845.6**<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION AND VENUE

1.    This complaint seeks damages for the violation of the substantive Due Process rights of Robert John Clouthier, deceased, by Defendant County Of Contra Costa, California (sometimes, "the County") and County personnel acting under color

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Clouthier v. County Of Contra Costa, et al* No._____                                Page 1
COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW CLAIMS

of law.  Plaintiffs bring this action under 42 United States Code § 1983.  Plaintiffs also seek damages under State law against these Defendants whose conduct also caused the wrongful death of Robert John Clouthier.

2.     The complaint seeks remedies pursuant to Title 42, United States Code, § 1983.  Jurisdiction is conferred upon the United States District Court by Title 28, United States Code, sections 1331 and 1343.  This Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367(a).

3.     The actions giving rise to defendants' liability, as alleged in this Complaint, occurred in the City of Martinez, County of Contra Costa, State of California.  Venue is therefore proper in this Court pursuant to Title 28, United States Code, section 1391(b), and Local Rule 3-2(d).

**JURY TRIAL DEMAND**

4.     Plaintiffs hereby demand a jury trial in this action.

**IDENTIFICATION OF PARTIES**

5.     This complaint arises from the death of Robert John Clouthier (hereinafter sometimes "Robert").  Robert died without leaving a will.  To the extent this action seeks to recover damages under 42 United States Code § 1983 for violations of rights personal to Robert John Clouthier, this action is brought on behalf of the Estate Of Robert John Clouthier by his successors in interest and parents Gregory Clouthier and Ann Clouthier.  The actions and failures to act which this Complaint alleges against the County were committed by individuals acting under color of law within the course and scope of their employment with the County.

6.     Gregory Clouthier and Ann Clouthier also seek damages for the wrongful death of their son, Robert, under the laws of the State of California, against Defendant County of Contra Costa for Robert's wrongful death.

7.     The County of Contra Costa is a local government entity and a "person" under 42 U.S.C. § 1983.  The actions and failures to act which this Complaint alleges against the County were committed by individuals acting in the course and scope of

**CASPER, MEADOWS,
SCHWARTZ & COOK**
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Clouthier v. County Of Contra Costa, et al* No._____                                    Page 2
COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW CLAIMS

their employment with the County. The County also is liable under California State law for the actions and inaction of its employees which caused the harm of which Plaintiffs complain.

8. At all times relevant to the allegations in this Complaint, the County operated the Martinez Detention Facility, located in Martinez, California.

9. At all times relevant, Defendant Warren Rupf was the Sheriff of the County and the County's policy maker responsible for the administration of the Martinez Detention Facility and for the training of County Jail Personnel, including deputy sheriffs and mental health personnel. At all times relevant, Sheriff Rupf was acting under color of law and within the course and scope of his employment. He is sued in his individual capacity.

10. On information and belief, Plaintiffs further allege that the Sheriff may have delegated this responsibility to Detention Facility administrators, including, but not limited to, County employees of the Health Services Department. To the extent such delegation occurred, those administrators acted as the County's policymakers responsible for the administration of the Detention Facility and the supervision of suicidal detainees and inmates. The names of these individuals are unknown. They are sued in their individual capacity.

11. At all times relevant, Defendant Matt Foley was a Contra Costa County Sheriff's Deputy employed by the County at the Martinez Detention Facility, acting under color of law and within the course and scope of his employment. He is sued in his individual capacity.

12. At all times relevant, Defendant Erik Steele was a Contra Costa County Sheriff's Deputy employed by the County at the Martinez Detention Facility, acting under color of law and within the course and scope of his employment. He is sued in his individual capacity.

13. Defendant Margaret Blush at all times relevant, was a Mental Health Specialist employed by the County at the Martinez Detention Facility, acting under

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Clouthier v. County Of Contra Costa, et al* No._____                                    Page 3
COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW CLAIMS

color of law and within the course and scope of her employment.  She is sued in her individual capacity.

14.     Plaintiffs are ignorant of the true names and capacities of defendants DOES 1 through 100, and therefore sue these defendants by such fictitious names. Plaintiffs will amend their complaint when the true names and capacities of DOES 1 through 100 have been ascertained.  Plaintiffs are informed and believe, and on that basis allege, that defendants DOES 1 through 100 are responsible in some manner for the injuries suffered and damages incurred by Plaintiffs as alleged in this complaint.  Any reference in this complaint to "Defendant," "Defendants," or to a specifically-named Defendant refer also to Defendants DOES 1 through 100.  These Defendants are sued in their official and individual capacities.

**Facts Giving Rise To This Complaint**

15.     In July-August 2005, the Martinez Detention Facility contained two single-detainee safety cells and two single-detainee Observation Rooms for the housing of suicidal detainees.  The Observation Rooms are sometimes referred to as "line-of-sight" rooms.

16.     Each safety cell housed only one detainee or inmate.  Detainees housed in safety cells generally were clothed only in a safety smock or safety blanket which could not be torn or used to facilitate a suicide attempt.   Staff observed these detainees continually, entering observations in a log every 15 minutes.

17.     Generally, detainees or inmates placed in a safety cell only remained in these cells a limited amount of time, generally no longer than 24 hours.

18.     Following his or her placement in a safety cell, detainees still considered at risk to commit suicide were placed in one of two Observation Rooms.  Detainees placed in these rooms were generally, although not always, observed every fifteen minutes and a Sheriff's deputy or other staff member entered his or her observations in a log.  Detainees placed in such rooms were provided with a safety smock, safety blanket or regular jail clothes.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

19.   At approximately 9:30 p.m. on the night of July 26, 2005, Contra Costa Sheriff's deputies were dispatched to the home of Gregory and Ann Clouthier in an unincorporated area of Contra Costa County, near Walnut Creek.

20.   The deputies learned that Robert, Gregory's and Ann's, adult son, had jumped through a window of the Clouthier home.  The deputies arrested Robert for felony vandalism and misdemeanor battery.

21.   Robert, who had been injured when jumping through the window, was transported by ambulance to the Contra Costa Regional Health Center in Martinez; he refused medical treatment and made suicidal remarks.

22.   Thereafter, Robert was transported to the Martinez Detention Facility.

23.   After arriving at the jail, Robert informed the Facility's nursing staff that he was suicidal and had attempted suicide two months prior to his arrest.  His hospital record included ten prior hospitalizations, including many for suicidal behavior.

24.   After speaking with Robert, Contra Costa County Mental Health Specialist Sharlene Hanaway placed Robert in a safety cell shortly after 8:00 a.m. on July 27, 2005.  Specialist Hanaway's notes written at 8:03 a.m. stated that she considered Robert "very suicidal." Robert's clothes were replaced with a safety smock and he was restrained with ankle restraints.

25.   During the remainder of her shift, Hanaway and other staff checked on Robert at least every 15 minutes.  At 11:57 a.m., Hanaway noted that Robert "continues to want to die."

26.   Early that afternoon, Robert advised Mental Health Specialist Hanaway that he would take medication.  Hanaway thereafter called in staff psychiatrist Hanlin to meet with Robert.  Following that consultation, Hanaway therefore decided, with Dr. Hanlin's concurrence, that Robert could be transferred to a less restrictive housing environment.

27.   Hanaway did not trust Robert's statements that he was no longer suicidal.  Because Robert was less agitated, however, Hanaway directed Robert's

**CASPER, MEADOWS,
SCHWARTZ & COOK**
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

1   transfer to Cell 6, a "Line of Sight" Observation Room and further directed that Robert
2   be observed every 15 minutes and those observations recorded in a log.  At about
3   2:00 p.m. on July 27, 2005, staff moved Robert to that room.

4          28.    Very soon thereafter, staff transferred Robert to Observation Room 7.
5   That room also was a "Line of Sight" room located on M Module (the mental health
6   module) of the Detention Facility.  That room only has one bed.  He was dressed only
7   in a smock and deputies were to observe him every 15 minutes and note their
8   observations in a log.  Deputy Matt Foley, assigned to M Module, was aware that
9   Robert had numerous prior suicide attempts and had sustained lacerations on his
10  hand while jumping through a window.

11         29.    At 5:00 p.m., Mental Health Specialist Hanaway ended her shift at the
12  Detention Facility.   At that time, she believed that Robert remained intent on
13  committing suicide.  Before leaving, Hanaway "went to everyone in the Mental Health
14  Office and the Deputies in [the] intake area and advised them that Robert was truly
15  suicidal and that she felt he was going to try and kill himself. . . . that this situation was
16  the 'real deal.'"

17         30.    Hanaway also made copies of her reports and gave them to her
18  replacement, Mental Health Specialist Margaret Blush.  Hanaway informed Blush that
19  Robert was very suicidal and had been placed in the Observation Room on M Module
20  with a safety smock and safety blanket and required an evening assessment.

21         31.    Blush read Hanaway's reports about Robert.

22         32.    During Blush's final rounds on the night of July 27, 2005, Blush spoke
23  very briefly with Robert.   Following that conversation, and notwithstanding the
24  information Mental Health Specialist Hanaway had imparted to her, Blush directed
25  Deputy Matt Foley, the deputy sheriff on the Module, that Robert no longer needed to
26  be clothed in a safety smock and could have regular clothing.

27  / / /

28  / / /

**CASPER, MEADOWS,
SCHWARTZ & COOK**
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

33.     Blush "also told the deputy he [Robert] could be removed from the suicide log because the deputy is about four feet from him and can observe him at all times…I told the deputy he was to remain in the Observation Room."

34.     At 7:15 p.m. on July 27, 2005, Blush entered a note in the log that Robert was released from suicide log.

35.     Blush also entered her notes on the computer stating, "Inmate states now that he is not suicidal.  Robert was taken off suicide watch and advised that he will be evaluated the following morning for his mental health needs."  Because of Blush's continuing concern about Robert's mental health, however, she wanted Robert to remain housed in an Observation Room until he was further evaluated **and** cleared for a housing assignment in the general population of M Module.

36.     At approximately 9:30 p.m., on July 27, 2005, Robert was given his clothes and his safety smock was removed.

37.     When Deputy Matt Foley began his shift at 12:00 noon on July 28, 2005, Robert was still in Observation Room 7 on M Module.  When Foley's shift ended that night, Robert was still in Observation Room 7 on M Module, where he remained through the evening of July 31, 2005.

38.     On the evening of July 31, 2005, Defendant Deputy Erik Steele returned to duty and saw that Robert remained housed in Room 7.  Since July 27, 2005, no mental health specialist had contacted any Sheriff's deputy to discuss Robert's mental state.

39.     By August 1, 2005, the County, acting through Sheriff Rupf and Detention Facility administrators, had failed to develop any training materials governing the effect of the decision of a mental health specialist that Detention Facility staff were not required to continue logging observations every fifteen minutes of a particular detainee or inmate housed in an Observation Room in cases in which the mental health specialist still required the detainee or inmate to be housed in an Observation Room as a result of their continuing threat to commit suicide.

**CASPER, MEADOWS,
SCHWARTZ & COOK**
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

40.     By August 1, 2005, the County, acting through Sheriff Rupf and Detention Facility administrators, had failed to develop any uniform policy governing the effect of the decision of a mental health specialist that Detention Facility staff were not required to continue logging observations every fifteen minutes of a particular detainee or inmate housed in an Observation Room in cases in which the mental health specialist still required the detainee or inmate to be housed in an Observation Room as a result of their continuing threat to commit suicide.

41.     As of August 1, 2005, Sheriff's deputies, including Deputy Foley understood that "The rooms are designated for observation.  Once the observe log is removed, it's our belief that we are free to move them into the general population of the module."

42.     As of August 1, 2005, however, other County personnel, including Mental Health Specialist Margaret Blush, understood that eliminating the requirement that staff log observations of an inmate housed in an Observation Room did **not** indicate or signal that deputies may transfer that inmate from the Observation Room to the general population.

43.     As of August 1, 2005, Deputies Foley and Steele, consistent with their understanding, believed that because Robert was no longer on suicide log, a deputy could move Robert to the general prison population if Foley or another deputy needed the Observation Room to house a newly arriving inmate.

44.     In the early hours of August 1, 2005, while Deputy Steele was on duty, a supervising sergeant directed Defendant Sheriff's deputy Steele to move Robert from Observation Room 7 to Cell 10, which Robert was to share with inmate Marc Watkin.

45.     In that room, Robert again was given bedding, including sheets.

46.     Cell 10 was not a "line of sight" cell which a deputy could directly observe from his station on M Module.  Cell 10 was considered a general population cell.

/ / /

47.     Contrary to the understanding of the mental health treatment specialists,

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

the Sheriff's deputies understood that once an inmate was cleared from the observation log, the decision to transfer the inmate was the responsibility of the Sheriff's deputies.

48.     Deputy Steele understood that he was not required to contact a mental health professional prior to moving Robert.  Nonetheless, he tried to contact a mental health professional, but was unable to do so.

49.     At the time Robert was transferred from an Observation Room to Cell 10, Sheriff's deputies understood that if an inmate were not on a suicide log, no written or oral County or Sheriff's Department policy existed requiring Sheriff's deputies to obtain prior approval from a mental health staff member before moving an inmate from an Observation Room to a two-person cell.

50.     Mental Health Specialist Blush, however, had a different understanding of County policy; she believed a mental health staff member always was required to approve an inmate's transfer from an Observation Room to a general population cell.

51.     These contrasting views of how suicidal detainees such as Robert were to be handled resulted from the failures of the County, Sheriff Rupf and Detention Facility administrators to properly train Detention Facility Staff.

52.     On August 1, 2005, Defendant Blush, and other mental health specialists defendants who have been sued by their fictitious names, were aware that Robert had been transferred to Cell 10 and had been provided with regular bedding, including at least one bed sheet.

53.     Nonetheless, Defendant Blush and other mental health specialists on duty on August 1, 2005, failed to direct Sheriff's deputies to move Robert back to an Observation Room where he could not have attempted to commit suicide.

54.     In addition Defendant Blush and other mental health specialists on duty on August 1, 2005, failed to take any other protective action even though Blush believed that Robert's transfer violated the policy of the Detention Facility.

55.     Between 12:00 and 12:30 p.m. on August 1, 2005, Defendant Deputy

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

Matt Foley began his shift on M Module.

56.    In the early evening of August 1, 2005, around 6:15 p.m., Robert took his bed sheet off his bed and tied it into a noose.

57.    Robert placed the knotted sheet on top of the bed, with part of the sheet hanging over the bunk.  The sheet and noose were in full and obvious view of anyone entering the cell.

58.    At approximately 7:15 p.m. on August 1, 2005, Deputy Foley opened the door to Cell 10 and informed Marc Watkin, Robert's cellmate, that Watkin could leave the cell for two hours free time.

59.    Deputy Foley advised Robert, that, as a newer detainee, Robert was entitled to one hour free time which would begin at 8:00 p.m.    Robert nodded to Deputy Foley, indicating to Foley that he understood Foley's instructions.

60.    When Deputy Foley entered Cell 10 to inform Watkin that Watkin' could leave the cell, the knotted bed sheet was in full view and readily visible.

61.    Nonetheless, Sheriff's deputy Foley, who was aware of Robert's prior attempts to commit suicide, took no action in response to the presence of the knotted bed sheet in full view of someone standing in the doorway of the cell.

62.    At 7:42 p.m. Watkin asked that staff open the cell door.  When Deputy Foley opened the cell door, Foley discovered Robert hanging.  Robert had used the bed sheet to hang himself.

63.    After Deputy Foley and Mental Health Specialist Blush attempted to revive Robert, paramedics arrived and took over.  Robert was transported to the Contra Costa Regional Medical Center in Martinez.  He had lapsed into an irreversible coma and was removed from life support on August 11, 2005.  He was pronounced dead at 5:40 p.m. on August 11, 2005.

64.    During the period between Robert's arrest on July 27, 2005 and his suicide on August 1, 2005, Robert retained the status of a pretrial detainee who had not been convicted or sentenced for any crime arising from the incident which

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Clouthier v. County Of Contra Costa, et al* No._____                                      Page 10
COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW CLAIMS

1   precipitated his arrest on July 27, 2005.

2       65.   Neither the County's Board of Supervisors, Sheriff Rupf nor other

3   Detention Facility administrators disciplined any of the staff members whose action or

4   inaction permitted Robert to commit suicide.

5   **DAMAGES**

6       66.   As a direct result of the actions and inaction of Defendants County of

7   Contra Costa, Sheriff Warren Rupf, Deputy Foley, Deputy Steele, Mental Health

8   Specialist Blush and DOES 1 through 100, Robert was allowed to commit suicide while

9   a pretrial detainee at the Contra Costa County Martinez Detention Facility.

10       67.   Plaintiffs Gregory and Ann Clouthier have suffered the loss of decedent's

11   society, comfort, protection, companionship, love, solace, affection, and moral support.

12   In addition to these damages, plaintiffs are entitled to recover the reasonable value of

13   funeral and burial expenses.

14       68.   Plaintiffs have retained attorneys and investigators to pursue their rights

15   as asserted in this complaint.   Plaintiffs are entitled to an award of reasonable

16   attorneys' fees incurred in the prosecution of this action against Defendants County of

17   Contra Costa, Sheriff Warren Rupf, Sheriff's Deputy Matt Foley, Sheriff's Deputy Erik

18   Steele, Mental Health Specialist Margaret Blush and DOES 1 through 100 pursuant to

19   42 U.S.C. § 1988.

20
21   **FIRST CLAIM FOR RELIEF**
**Sheriff Warren Rupf, Sheriff's Deputy Matt Foley, Sheriff's Deputy Erik Steele,**
**Mental Health Specialist Margaret Blush**
22   **and Does 1 through 100**
**42 U.S.C. § 1983**

23       69.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 63

24   of this complaint as though fully set forth in this cause of action.

25       70.   Robert was arrested on July 27, 2005 and detained at the Martinez

26   Detention Facility on July 28, 2005.  From that date until suicide on August 1, 2005,

27   Robert was known by these Defendants to be at a high risk to commit suicide.

28       71.   That risk was obvious to all staff.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

72.     Notwithstanding her knowledge that Robert presented a high risk of suicide and had attempted to commit suicide on prior occasions, Defendant Blush decided that staff, including Sheriff's deputies, would not be required to log their observations of Robert's condition every fifteen minutes, although Defendant Blush continued to believe that, because of his condition, Robert needed to remain in a Line of Sight Observation Room until he was further evaluated and cleared for housing in the general population.

73.     Defendant Blush's decision was understood by Sheriff's deputies that they could move Robert into the general population without increasing the risk of harm to him.

74.     Acting on that understanding and without obtaining clearance from the mental health staff, Defendant Sheriff's Deputy Erik Streele moved Robert from a Line of Sight Observation Room to Cell 10, a two-person cell designated for the general population on M Module.

75.     In the evening of August 1, 2005, Mental Health Specialist Blush was aware that Robert had been transferred from the Observation Room into the general population, but failed to take any action to protect Robert, including, but not limited to, directing Sheriff's deputies to place Robert back into an Observation Room.

76.     In the evening of August 1, 2005, Deputy Foley was aware that Robert had been at substantial risk to commit suicide.

77.     At approximately 7:15 p.m. on the evening of August 1, 2005, when Deputy Foley entered the cell occupied by Robert and Marc Watkin, Robert's knotted bed sheet was hanging from the bed post in clear view of Deputy Foley.

78.     The knotted bed sheet evidenced Robert's intent to commit suicide.

79.     Nonetheless, Deputy Foley did not remove the knotted bed sheet and failed to alert members of the mental health staff that Robert had knotted the bed sheet.

80.     At all time relevant, Defendant Sheriff Warren Rupf was fully aware that

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Clouthier v. County Of Contra Costa, et al* No._____                                    Page 12
COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW CLAIMS

the Detention Facility housed suicidal detainees and suicidal inmates.  At all times relevant, Sheriff Rupf also was fully aware that absent adequate training of Detention Facility staff to prevent the suicide of detainees and inmates and policies necessary to protect suicidal detainees and inmates from committing suicide, such detainees and inmates would commit suicide.  Nonetheless, Sheriff Rupf failed to properly train the staff of the Detention Facility or to promulgate and enforce policies to take appropriate steps to prevent detainees and inmates from committing suicide.  Sheriff Rupf failures, including the failures to train, to establish proper policies and the failure to discipline subordinates, are more fully detailed in paragraphs 39-42, 49-50, and 65 hereof and in the allegations set forth Second Claim For Relief, which Plaintiffs incorporate here by reference.  Sheriff Rupf committed these failures in both his official and individual capacities.  His failures were a moving force directly contributing to the death of Robert Clouthier.

81.    As a direct result of the actions and inaction of these Defendants, Robert was able to commit suicide and was deprived of his right to life and liberty without due process of law, as protected by the Fourteenth Amendment to the United States Constitution, and suffered damages as described in this complaint.

**WHEREFORE**, Plaintiffs seek relief as hereafter set forth.

**SECOND CLAIM FOR RELIEF**
**County Of Contra Costa**
**42 U.S.C. § 1983**

82.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 81 of this complaint as though fully set forth in this claim for relief.

83.    At all times relevant, the County, acting through Sheriff Rupf and Detention Facility administrators, possessed the power and authority to develop and implement training materials and implement and enforce policies, customs, practices and procedures regarding the safety of suicidal detainees and inmates.

/ / /

84.    At all times relevant, the County, acting through Sheriff Rupf and

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

Detention Facility administrators, had extensive knowledge of the known or obvious danger of failing to properly train mental health specialists and Sheriff's deputies and of failing to adequately articulate the relationship between mental health specialists and Sheriff's deputies in the supervision of suicidal detainees and inmates.

85.     At all times relevant, the County, acting through its policymakers, Sheriff Rupf and Detention Facility administrators, was fully aware that the failure to properly train the staff of the Martinez Detention Facility to take appropriate steps to safeguard suicidal detainees and inmates would place such detainees and inmates at great risk of suicide.

86.     At all times relevant, the County, acting through its policymakers, Sheriff Rupf and Detention Facility administrators, was fully aware that to protect suicidal detainees and inmates from harm, the County must have trained the staff of the Detention Facility and prepared and disseminated training materials governing the logging of staff member's observations of a particular detainee or inmate housed in an Observation Room.

87.     At all times relevant, the County, acting through its policymakers, Sheriff Rupf and Detention Facility administrators, was fully aware that to protect suicidal detainees and inmates from harm, the County must have implemented and enforced policies and standards governing the logging of staff member's observations of a particular detainee or inmate housed in an Observation Room.

88.     At all times relevant, it also was obvious that such policies and standards would include the necessity of logging observations for all detainees or inmates housed in Observation Rooms and the effect of a decision of a mental health specialist that Detention Facility staff were not required to continue logging observations every fifteen minutes of a particular detainee or inmate housed in an Observation Room.

/ / /

89.     At all times relevant, the County, acting through its policymakers, Sheriff Rupf and Detention Facility administrators, was fully aware that to protect suicidal

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Clouthier v. County Of Contra Costa, et al* No._____                                    Page 14
COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW CLAIMS

detainees and inmates from harm, the County was required to train the staff of the Detention Facility and to prepare and disseminate training materials articulating the relationship between the responsibilities of mental health specialists and deputies in the supervision and placement of suicidal detainees and inmates.

90.     At all times relevant, the County, acting through its policymakers, Sheriff Rupf and Detention Facility administrators, was fully aware that to protect suicidal detainees and inmates from harm, the County was required to implement and enforce policies, standards and procedures articulating the relationship between the responsibilities of mental health specialists and deputies in the supervision and placement of suicidal detainees and inmates.

91.     At all times relevant, the County, acting through its policymakers, Sheriff Rupf and Detention Facility administrators, was fully aware that to protect suicidal detainees and inmates from harm, the County was required to train the staff of the Detention Facility and to prepare and disseminate applicable training materials covering when staff may transfer detainees and inmates in and out of safety cells, Observation Rooms and line-of-sight rooms and from those rooms into the general Detention Facility population.

92.     At all times relevant, the County, acting through its policymakers, Sheriff Rupf and Detention Facility administrators, was fully aware that to protect suicidal detainees and inmates from harm, the County was required to implement and enforce proper policies and standards governing when staff may transfer detainees and inmates in and out of safety cells, Observation Rooms and line-of-sight rooms and from these rooms into the general Detention Facility population.

93.     At all times relevant, the County, acting through its policymakers, Sheriff Rupf and Detention Facility administrators, was fully aware that it was necessary to train staff and prepare and disseminate training materials which would train staff about the circumstances in which the transfer of a suicidal detainee or inmate to the Contra Costa Regional Health Center was necessary for the protection of a detainee or

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

_Clouthier v. County Of Contra Costa, et al_ No._____                    Page 15
COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW CLAIMS

1  inmate.

2      94.    At all times relevant, the County, acting through its policymakers, Sheriff

3  Rupf and Detention Facility administrators, was fully aware that it was necessary to

4  implement and enforce policies and standards setting forth the circumstances in which

5  the transfer of a suicidal detainee or inmate to the Contra Costa Regional Health

6  Center was necessary for the protection of a detainee or inmate.

7      95.    At all times relevant, the County, acting through its policymakers, Sheriff

8  Rupf and Detention Facility administrators, failed to properly train the staff of the

9  Martinez Detention Facility to take appropriate steps to safeguard suicidal detainees

10  and inmates.

11      96.    At all times relevant, the County, acting through its policymakers, Sheriff

12  Rupf and Detention Facility administrators, failed to properly implement and enforce

13  policies, standards and procedures in taking appropriate steps to safeguard suicidal

14  detainees and inmates.

15      97.    At all times relevant, the County, acting through Sheriff Rupf and

16  Detention Facility administrators, failed to train the staff of the Detention Facility about,

17  or to develop and disseminate proper training materials governing, the logging of staff

18  member's observations of a particular detainee or inmate housed in an Observation

19  Room.

20      98.    At all times relevant, the County, acting through Sheriff Rupf and

21  Detention Facility administrators, failed to develop policies and standards governing

22  the logging of staff member's observations of a particular detainee or inmate housed in

23  an Observation Room.

24      99.    At all times relevant, the County, acting through Sheriff Rupf and

25  Detention Facility administrators, failed to train the staff of the Detention Facility about,

26  or to prepare and disseminate training materials governing the respective

27  responsibilities of mental health specialists and deputies in the supervision and

28  placement of suicidal detainees and inmates.

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Clouthier v. County Of Contra Costa, et al* No._____                                    Page 16
COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW CLAIMS

100.   At all times relevant, the County, acting through Sheriff Rupf and Detention Facility administrators, had failed to clearly articulate standards and policies governing the respective responsibilities of mental health specialists and deputies in the supervision and placement of suicidal detainees and inmates.

101.   At all times relevant, the County, acting through its policymakers, Sheriff Rupf and Detention Facility administrators, failed to train the staff of the Detention Facility about, or to develop applicable training materials covering the transfer of detainees and inmates in and out of safety cells, Observation Rooms and line-of-sight rooms and from these rooms into the general Detention Facility population.

102.   At all times relevant, the County, acting through its policymakers, Sheriff Rupf and Detention Facility administrators, failed to develop proper policies and standards governing the transfer of detainees and inmates in and out of safety cells, Observation Rooms and line-of-sight rooms and from these rooms into the general Detention Facility population.

103.   At all times relevant, the County, acting through its policymakers, Sheriff Rupf and Detention Facility administrators, failed to train staff of the Detention Facility or prepare and disseminate training materials which would train staff about the circumstances in which the transfer of a suicidal detainee or inmate to the Contra Costa Regional Health Center was necessary for the protection of a detainee or inmate.

104.   At all times relevant, the County, acting through its policymakers, Sheriff Rupf and Detention Facility administrators, failed to implement and enforce policies and standards setting forth the circumstances in which the transfer of a suicidal detainee or inmate to the Contra Costa Regional Health Center was necessary for the protection of a detainee or inmate.

/ / /

105.   As a proximate result of the failures described in this complaint, of the County, acting through Sheriff Rupf and Detention Facility administrators, described in

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

this complaint, to properly train Sheriff's deputies and mental health specialists employed at the Martinez Detention Facility; to properly prepare and  disseminate training materials or to promulgate policies and standards to safeguard suicidal detainees and inmates, Robert was able to commit suicide and was deprived of his right to life and liberty without due process of law, as protected by the Fourteenth Amendment to the United States Constitution, and suffered damages as described in this complaint.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### THIRD CLAIM FOR RELIEF
### Against Defendants Margaret Blush, Matt Foley And Erik Steele
### Wrongful Death

106.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 67 and paragraphs 70 through 79 of this complaint as though fully set forth in claim for relief.

107.   On January 30, 2006, Plaintiffs submitted a timely claim to the County of Contra Costa pursuant to the provisions of the California Tort Claims Act, California Government Code §§ 910 et seq.  County denied the claim on February 28, 2006.

108.   Defendant Blush, while acting within the course and scope of her employment was negligent in eliminating the requirement that Robert be observed every 15 minutes and that those observations be logged by members of the staff of the Martinez Detention Facility.  Defendant Blush while acting within the course and scope of her employment also was negligent in permitting Robert to possess a bed sheet, which she knew or must have known could provide a means by which he could hang himself.  Defendant Blush while acting within the course and scope of her employment also was negligent in failing to advise Sheriff's deputies, including Deputies Foley and Steele, that Robert was not to be moved into the general population.

109.   On August 1, 2005, Defendant Blush and other mental health specialists (who have been sued by their fictitious names) while acting within the course and scope of their employment, were aware that Robert had been transferred to Cell 10

CASPER, MEADOWS,
SCHWARTZ & COOK
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

and again had been provided with regular bedding, including at least one bed sheet. Defendant Blush and other mental health specialists (who have been sued by their fictitious names) while acting within the course and scope of their employment, negligently failed to direct Sheriff's deputies to move Robert to an Observation Room where he could not have attempted to commit suicide.

110.   On August 1, 2005, Defendant Blush and other mental health specialists (who have been sued by their fictitious names) while acting within the course and scope of their employment, were aware that Robert was still suicidal and should not have been placed in the general population of the Detention Facility.   These Defendants were also aware of the limited number of safety cells and Observation Rooms designated for the housing of suicidal detainees and inmates and that no such safety cell or Observation Room may have been available to house Robert. Defendant Blush and other mental health specialists (who have been sued by their fictitious names) while acting within the course and scope of their employment, negligently failed to recommend that if no safety cell or Observation Room were available to house Robert, that Robert be transferred to the Contra Costa County Regional Health Center.

111.   On August 1, 2005, Defendant Erik Steele, aware that Robert had been placed in an Observation Room due to the risk which existed that he would commit suicide if unprotected, transferred Robert from an Observation Room to a cell housing the general population.

112.   Defendant Matt Foley, who was aware of the risk that Robert would commit suicide, was negligent in failing to remove the knotted bed sheet from Robert's cell on August 1, 2005, although such bed sheet was in full view.

/ / /

113.   As a direct result of Defendants' negligence, Plaintiffs Gregory and Ann Clouthier have suffered the loss of decedent's society, comfort, protection, companionship, love, solace, affection, and moral support.   In addition to these

**CASPER, MEADOWS,**
**SCHWARTZ & COOK**
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

*Clouthier v. County Of Contra Costa, et al* No._____                                      Page 19
COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW CLAIMS

damages, plaintiffs are entitled to recover the reasonable value of funeral and burial expenses.

114.   Defendant County and Does 1 through 100 are liable under California Government Code §§ 844.6 and 845.6 for the injuries sustained to Plaintiffs Gregory and Ann Clouthier caused by these Defendants wrongful acts or omissions.

**WHEREFORE,** Plaintiffs pray for relief as set forth below.

**FOURTH CLAIM FOR RELIEF**
**Professional Negligence**
**Against Margaret Blush**

115.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 67 and 70 through 72, 75, and 107 through 110 of this complaint as though fully set forth in this claim for relief.

116.   Defendant Blush was a healthcare provider employed by the County of Contra Costa and at all times was acting within the course and scope of her employment.

117.   As a direct result of Defendant Blush's negligent failure to provide Robert with the standard of medical care which she had a duty to provide, as alleged above, Plaintiffs Gregory and Ann Clouthier have suffered the loss of decedent's society, comfort, protection, companionship, love, solace, affection, and moral support.   In addition to these damages, plaintiffs are entitled to recover the reasonable value of funeral and burial expenses.

**WHEREFORE,** Plaintiffs pray for relief as set forth below.

1.   For general and pecuniary damages according to proof;

2.   For special damages, including the reasonable cost of funeral and burial expenses, according to proof;

3.   For reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

5.   For prejudgment interest pursuant to Civil Code section 3288, or as otherwise permitted by law;

6.   For costs of suit; and

CASPER, MEADOWS, SCHWARTZ & COOK
2121 N. California Blvd., Suite 1020
Walnut Creek, CA 94596
TEL: (925) 947-1147
FAX (925) 947-1131

1           7.    For such other and further relief as the court may deem just and

2    proper.

3

4    Dated: __June__ , 2006 _____

5                             Stan Casper
                         Thom Seaton

6                             **CASPER, MEADOWS & SCHWARTZ**
                         Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CASPER, MEADOWS,**
**SCHWARTZ & COOK**
2121 N. California Blvd.,
Suite 1020
Walnut Creek, CA  94596
TEL: (925) 947-1147
FAX (925) 947-1131

_Clouthier v. County Of Contra Costa, et al_ No._____                                    Page 21
COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW CLAIMS